**RAY v. BRUCE.**

**No. 47.**

Municipal Court of Appeals for the
District of Columbia.

April 6, 1943.

Ben Lindas, of Washington, D. C., for
appellant.

Fred J. Rice, of Washington, D. C., for
appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

This appeal is by a garnishee against whom a judgment was entered on June 17, 1942, for failure to answer interrogatories or to respond to a writ of garnishment served personally on June 6, 1942.

The judgment was authorized by and entered pursuant to Title 16, Section 323, D.C.Code (1940 Edition) in part as follows: "If the garnishee shall have failed to answer the interrogatories served on him, or to appear and show cause why a judgment of condemnation should not be entered, judgment shall be entered against him for the whole amount of the plaintiff's claim, and costs, and execution had thereon. (Mar. 3, 1901, 31 Stat. 1263, ch. 854, § 467.)"

A motion to vacate the judgment was filed by the garnishee on June 29, 1942, within the term at which the judgment was entered. The motion was later amended. In the motion and the amendment, neither of which was verified or supported by affidavit, garnishee claimed that his failure to answer was due to a misunderstanding on his part and to advice of counsel that the writ did not have to be answered. The trial court denied the motion to vacate and the appeal was taken from the order denying the motion. No appeal was taken from the judgment of June 17, 1942, against the garnishee.

The effect of this motion under our Rule 27(d)[1] was to postpone the running of the time for appeal until final action on the motion.

A preliminary question is whether we may entertain the appeal from the order denying the motion. In the absence of objection a duty is nevertheless imposed on the court to notice an excess of jurisdiction and to limit review to appealable orders or judgments.[2]

In International Bank v. Securities Corporation, 59 App.D.C. 72, 32 F.2d 968, it was held that "appeal will not lie from an order denying a motion to vacate a judgment".

In that case, as here, the garnishment was served personally. There the garnishee answered, but failed to answer two of the three interrogatories. A default judgment was entered against it. Two weeks later an attachment was issued on this judgment. The garnishee immediately moved to vacate the judgment, supporting its motion by affidavits stating that it was not indebted to the defendant in the case and that its officer who signed the return had inadvertently failed to answer the first two interrogatories, thinking that his answer to the last question included the two preceding. The motion was filed during the term at which the judgment was entered. From the order denying the motion to vacate, the garnishee appealed. The decision would seem to be conclusive of the present appeal.

This case has been cited and followed in cases in the Seventh and Ninth Circuit Courts of Appeals.[3] In one of these cases, Smith v. United States ex rel. Gorlo, the court commented on the decision in Stevirmac Oil & Gas Co. v. Dittman, 245 U.S. 210, 38 S.Ct. 116, 62 L.Ed. 248, construing it as applicable only to motions to vacate filed after the term at which the judgment was entered. The same view was expressed by Judge Learned Hand in Board of Supervisors of Rockland County v. Knickerbocker Ice Co., 2 Cir., 80 F.2d 248.

In Benson v. United States, 9 Cir., 93 F.2d 749, 751, where the legal situation was similar to the present case, the court, citing the Stevirmac case, supra, without comment, said:

"It is conclusively settled that a ruling upon a motion to vacate a judgment, made in the same term and the same cause in which the challenged judgment is entered, is not an appealable order. Connor v. Peugh's Lessee, 18 How. 394, 395, 15 L.Ed. 432; Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013; Hume v. Bowie, 148 U.S. 245, 255, 13 S.Ct. 582, 37 L.Ed. 438; Stevirmac Oil Co. v. Dittman, 245 U.S. 210,

---

[1] This rule is as follows: "When a motion has been seasonably filed for a new trial, or for judgment notwithstanding the verdict, or to vacate or modify the order, finding, or judgment, the times specified in sections (a), (b), and (c) hereof shall not begin to run until disposition of such motion."

[2] Mansfield, C. & M. L. R. Co. v. Swan,

111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462; Campbell v. Porter, 162 U.S. 478, 16 S.Ct. 871, 40 L.Ed. 1044; Smith v. United States ex rel. Gorlo, 7 Cir., 52 F.2d 848; 13 Am.Jur. 383.

[3] Smith v. United States ex rel. Gorlo, 7 Cir., 1931, 52 F.2d 848; Republic Supply Co. v. Richfield Oil Co., 9 Cir., 1935, 74 F.2d 909.

214, 38 S.Ct. 116, 62 L.Ed. 248; Smith v. United States, 7 Cir., 52 F.2d 848, and cases cited; Board of Supervisors v. Knickerbocker Ice Co., 2 Cir., 80 F.2d 248, 250; Republic Supply Co. v. Richfield Oil Co., 9 Cir., 74 F.2d 909, 910, and cases cited.

"Whatever hardship or injustice, if any, there may be in the denial of the motion, we have no power to consider in the attempted appeal from the motion to vacate the judgment."

This decision was cited and followed in the same circuit in Jackson v. Heiser, 111 F.2d 310, and Hicks v. Bekins M. & S. Co., 115 F.2d 406.

The ruling that an order denying a motion to vacate a judgment is not appealable has been adhered to in our courts in an extended series of opinions.

In Tubman v. Baltimore & O. R. Co., 1902, 20 App.D.C. 541, the court dismissed the appeal from an order denying a motion to vacate a judgment of dismissal for failure to prosecute.

In Swenk v. Nicholls, 1912, 39 App.D.C. 350, the court dismissed an appeal from a motion to vacate a judgment by default.

In Dante v. Bagby, 1913, 39 App.D.C. 516, the motion was to vacate a judgment entered nunc pro tunc after the death of the original defendant.

The court said: "It will be observed that the appeal was taken from the order denying the motion to vacate the judgment. Appeal does not lie from such an order. The motion is addressed to the discretion of the court, and is intended to furnish the court an opportunity to correct its own error."

In Doyle v. District of Columbia, 1916, 45 App.D.C. 90, where a verdict for the defendant had been directed at the trial the court quoted the above statement from Dante v. Bagby, supra, and said: "That an appeal must be taken from the judgment, and not from the order denying the motion to vacate the judgment, is settled practice in this court."

The ruling in International Bank v. Securities Corporation, 1929, supra, has been stated.

It is noted that in each of these cases the motion did not attack the validity of the judgment for lack of jurisdiction but sought relief, usually from the movant's default in appearing or pleading to an action to which he was a party before the court, and always in a case within the court's jurisdiction.

█ In such cases the motion must be made within the term or other fixed time limited by rule of court; it must be made while the court retains jurisdiction over its judgment; it is addressed to the discretion of the court and is not reviewable except for abuse of discretion.

█ But where the motion asserts the invalidity of the judgment, as where it has been entered without sufficient service to bring a defendant or garnishee into court, the attack on the judgment has been regarded as an independent proceeding.[4] No limitation of time is recognized. The matter is one of legal right, and to be determined by fixed rules of law. No element of discretion is involved.

In Consolidated Radio Artists, Inc., v. Washington Section, etc., 1939, 70 App.D.C. 262, 105 F.2d 785; Wise v. Herzog, 1940, 72 App.D.C. 335, 114 F.2d 486; and Encyclopaedia Britannica, Inc., v. Shannon, U.S.App.D.C., January 25, 1943, 133 F.2d 397, the United States Court of Appeals for this district has entertained appeals from orders entered on motions to vacate judgments, in each case involving solely the validity of the service on the judgment debtor. The prior decisions of the same court cited here were noted but not overruled. We, therefore, interpret the last mentioned decisions as applicable only to appeals when the jurisdiction of the court to enter the judgment is assailed.

█ We hold that the order in this case was not an appealable judgment or order.

However, we have carefully examined the record in this case and in view of the importance of the questions of practice involved feel that we should state that we find no basis for the claim that the denial of the motion by the trial court was an abuse of discretion.

█ The motion was based on two grounds: (1) A misunderstanding on the part of the garnishee that he was required to answer the garnishment in ten days after service; and (2) advice of counsel that the garnishment did not have to be answered until after the trial of another and independent suit.

Both alleged grounds were based on facts not appearing of record, yet neither the

---

4 Stevirmac Oil & Gas Co. v. Dittman, supra.

motion nor its amendment were verified or accompanied by affidavit. So far as the record discloses no evidence was offered to support these allegations. This alone would have justified the denial of the motion.

In Bush v. Bush, 61 App.D.C. 357, 63 F. 2d 134, 135, after stating that an application to vacate a judgment "is addressed to the sound legal discretion of the trial court" and that "the party in default should show good cause before the default should be set aside" the court commented—"The failure to file an affidavit of his client is significant." There an affidavit of counsel was filed to support the motion.

The garnishment on which the judgment was entered was the third of three served on the appellant. The first, served April 30, was answered May 27, seventeen days late. The second, served May 14, was never answered. The answer to the third, due June 16, was not tendered until June 29, when it was filed with the motion to vacate the judgment of June 17. Garnishee attempted to excuse his failure to answer the third garnishment but offered no explanation of his delay in answering the first or of his failure to answer the second.

In his motion he asserts that the defendant was not employed by him after the garnishment was served—June 6th. Yet in the sworn answer to interrogatories tendered with the motion he admits that the defendant was employed by him through June 9th.

On the face of the writ is an official notice requiring the garnishee to appear and show cause within ten days after service. On the reverse side is a notice, printed above the interrogatories, that they must be answered under oath within ten days after service, and that upon neglect or refusal so to do judgment may be entered for the amount of the plaintiff's claim.

 Here there was no question that garnishee received all three writs. He used the copy of the first in making the return filed May 27, thirteen days after the second writ had been served personally on him by the marshal. The third was served personally. In considering the merits of his application to be relieved of his default his conduct throughout was pertinent and ma-

terial for the court to consider in determining whether the delay in answering the third writ was due to inadvertence or indifference.

 The motion to vacate was addressed to the discretion of the trial court.[5] We cannot reverse unless its denial was an abuse of that discretion, which is not shown in the present case.

Dismissed.

CAYTON, Associate Judge (dissenting).

I dissent. I cannot agree that the garnishee must forfeit $350 which he has never owed to defendant, to plaintiff or to anyone else. I disagree with the opinion of my colleagues on both points decided and I here set out my views separately on those points.

## I. The Question of Jurisdiction.

I find nothing in the case which justifies this court in turning advocate and seizing upon a technical point which was not even suggested by counsel, when its effect is to help perpetuate an injustice.

The majority opinion holds that the garnishee Ray has no standing here and no right even to be heard, because he appealed from the order overruling his motion to vacate the judgment, instead of appealing from the judgment itself. Thus his hope for justice is impaled on a stake of artificiality which has no rightful place in modern jurisprudence.

Great strides have been made in the past few years in the simplification of court procedure. By legislative action, the rule making power, and the power of judicial interpretation, technical distinctions have been abolished, and the administration of justice placed upon a reasonable business-like basis. This should mean that the day of the "special pleader" is gone, and that justice is not alone for him who manages to fit the right words into the right places. More important, it should mean that the right of appeal must be unfettered by ruse or artifice. This has been emphasized by the fact that Congress so recently restored the right of appeal to Municipal, Police and Juvenile Court litigants after they had been without it for more than twenty years.[1]

---

[5] Bush v. Bush, supra; Murray v. Hurst, 163 Md. 481, 163 A. 183, 185, 85 A.L.R. 442, in which the court said: "The court proceeds in the exercise of a general equitable jurisdiction, and will consider all the facts and circumstances, but will require that the party making the application shall clearly show by convincing proof that he acted in good faith, with ordinary diligence."

[1] The former method was by application to the United States Court of Appeals. 41 Stat. 1312, ch. 125, § 12. Title 11, Sec. 723, of the (1940 Edition) Code.

It was this legislative action, incidentally, which brought this court into being.

Surely in this emancipated period of judicial reform there is no justification for the kind of judge-made pitfall which the majority opinion creates. For that opinion says in effect that one seeking a review of the refusal of a trial judge to open a judgment and give him a trial on the merits, is lost unless he is careful to point out that he appeals not from the refusal to vacate but from the judgment itself. Is that not a legal anachronism? Does that distinction not belong in the limbo of the forgotten, along with the "common counts", the "money counts", the "negative-pregnant", the "absque hoc" and the great host of relics of the legalistic past?

What is the practical difference between noting an appeal from a default judgment and noting it from the refusal to vacate the judgment? Are not the motion to vacate and the overruling thereof bound up with the judgment itself? Does noting the appeal from the refusal to vacate give the garnishee any unfair advantage? Does any injury result to the plaintiff? Or any unfairness to the trial judge? If a garnishee or defendant appealed from a default judgment without first filing a motion to vacate would he not be summarily reminded that he had failed to exhaust his remedies below? Whatever words were put into the notice of appeal is it not perfectly plain that this garnishee, finding that a judgment had been entered against him for $350 sought to have it vacated, was refused by the trial judge and comes to us seeking a review of that refusal?

We must not forget that in the Municipal Court many defendants and almost all garnishees appear without counsel. But if the rule announced by the majority is to be the law, only those with deft and skillful counsel can hope to find their way into this court. That is hardly in keeping with either the letter or the spirit of the Act of April 1, 1942,[2] reorganizing the Municipal Court, creating this court and requiring us to formulate rules "to provide for the efficient administration of justice, and the same shall conform as nearly as may be practicable to the forms, practice, and procedure now obtaining under the Federal Rules of Civil Procedure". Among said rules is the requirement, Rule 8(f), 28 U.S.C.A. following section 723c that "all pleadings shall be so construed as to do substantial justice". Looking to this language it seems to me our plain duty to so construe the notice of appeal as to consider the appeal on its merits; and not close the door of this court to this garnishee and all others in the same predicament, not because counsel urges it or because public policy demands it but because the court itself decides to raise the so-called jurisdictional question.

All the local cases cited by the majority were decided before the adoption of the new federal rules, with the exception of the following:

Consolidated Radio Artists, Inc., v. Washington Section, etc., 1939, 70 App.D.C. 262, 105 F.2d 785. In that case as here the appeal was noted from the overruling of a motion to vacate a default judgment. The United States Court of Appeals nevertheless took the case, heard it on the merits, reversed and remanded it with such directions as were calculated to prevent injustice and bring about a hearing on the merits.

In Wise v. Herzog, 1940, 72 App.D.C. 335, 114 F.2d 486, the appeal was from a refusal to open a default in a small claims case, based upon registered mail service. Appellant was not entitled to an appeal of right. Nevertheless the court granted the appeal, considered the merits and wrote an exhaustive and enlightening decision charting the course for the Municipal Court in such cases and preventing future misunderstanding or confusion.

In Encyclopaedia Britannica, Inc., v. Shannon, U.S.App.D.C., January 25, 1943, 133 F.2d 397, the same court exercised its power not to deny an appeal but to grant it and to consider the merits. A reversal resulted.

True it is that in the three cases just mentioned the judgments were sought to be vacated on the ground of improper service. But I can see no practical difference between those cases and this, if notices of appeal, like other pleadings, are to be construed in such a way as to do substantial justice rather than impede it.

II. The Discretion of the Trial Court.

A garnishee is brought into a law case under circumstances somewhat similar to those which attend an ordinary witness. In reality, however, he becomes a party to

---

[2] Public Law 512—77th Congress., 56 Stat. 190, 196, § 9.

the case, since service of the writ confers personal jurisdiction[3] and binds the property or credits of the defendant (if he has any in his possession) in his hands and places them in custodia legis.[4]

Moreover a garnishee is almost always an innocent, disinterested third person who is made an unwilling party to a controversy, and subjected to annoyance and expense. He has no prospect of personal benefit, but is directly subject to injury and penalty. For that reason an even more liberal rule should be applied in considering applications by garnishees for relief from judgments of recovery than is applied to ordinary defendants.[5]

I am satisfied the trial court in the exercise of its discretion should have granted the motion to vacate.

The "discretion" which the law authorizes is not a mental or personal one, but to be exercised with careful regard to what is right and equitable under the circumstances and the law, and directed by reason and the conscience of the judge to a just result.[6] It is subject to review "where the error in its exercise is plainly shown, and works material hardship and injustice",[7] or where the reviewing court is satisfied that there has been an erroneous conclusion, or against reasonable, probable and actual deductions to be drawn from the facts.[8] That is so because "it is the policy of the law to bring about a trial on the merits whenever possible, so that any doubts which may exist should be resolved in favor of the application, to the end of securing a trial upon the merits";[9] for the judicial discretion should be exercised "in a manner to subserve and not to impede or defeat the ends of substantial justice".[10] These matters should be noted:

(1) The first garnishment was a nullity. It was issued and served improperly. The garnishee need not have answered it at all. But he did make full answer under oath stating that he not only owed defendant nothing but that defendant was indebted to him in the sum of $175. That answer, repeated in his answer to the third garnishment, stands uncontradicted in the record to this very moment. It is true that he filed his answer after the statutory ten day period; but it was still not too late, for plaintiff had taken no action in the meantime to enforce the default.[11]

(2) True, he ignored the second garnishment; but so did the plaintiff.

(3) On the heels of that came the third garnishment, accompanied on the very same day by a queer suit, unauthorized by statute and unknown to our practice, in which plaintiff claimed $79.80 directly of the garnishee for credits allegedly accumulated during the pendency of the second garnishment. That suit has never been tried and is still pending in the trial court.

(4) The original judgment against defendant Stotler was and still is under the cloud of direct attack by defendant's motion to vacate which is still pending and undisposed of. There can be no question that the judgment against the garnishee depends upon the validity of the original judgment.[12] Without such a valid original judgment a judgment of recovery may not even be entered.[13] And if that judgment be vacated below, or on appeal here, the judgment of recovery would necessarily fall with it, leaving the garnishee in the curious and unenviable position of having paid $350 for which neither he nor anyone else is liable.

(5) Within a little over a month garnishee was confronted with three garnishments and one law suit. It is small wonder that in that confused situation he fell into default. In my view this alone entitled him to a holding that his neglect was excusable.

(6) I think it is plain that to impose a penalty of $350 with accumulated costs

3 United States ex rel. Ordmann v. Cummings, 66 App.D.C. 107, 85 F.2d 273.

4 International Finance Co. v. Jawish, 63 App.D.C. 262, 71 F.2d 985.

5 Evans v. Mohn, 55 Iowa 302, 7 N.W. 593; Montayne v. Husted, 3 Kulp, Pa., 325; Nicholson v. Fitzpatrick, 2 Phila., Pa., 205; First State Bank of Kermit v. Krenelka, 23 N.D. 568, 137 N.W. 824; McConnell v. Margulies, 39 S.D. 563, 165 N.W. 990; Waples on Attachment, Vo. 2, 2d Ed. 501.

6 Pettegrew v. Pettegrew, 128 Neb. 783, 260 N.W. 287.

7 In re Mattullath, 38 App.D.C. 497.

8 McFarlan v. Fowler Bank City Trust Co., 214 Ind. 10, 12 N.E.2d 752.

9 Nicholls v. Anders, 13 Cal.App.2d 440, 56 P.2d 1289, 1292.

10 Id.

11 Banville v. Sullivan, 11 App.D.C. 23.

12 Colliflower & Co. v. McCallum-Sauber, 61 App.D.C. 390, 63 F.2d 366.

13 Id., and cases cited. See, also, 1940 Code, §§ 16—319 and 16—329.

against this garnishee would be to inflict a penalty out of all proportion to the nature of his neglect. This is especially true when we remember that the trial judge had a much more humane alternative, namely, to vacate the judgment and impose reasonable terms upon the garnishee.[14]

(7) It should not be forgotten that plaintiff could have obviated all the confusion which followed by taking some or all of the steps outlined by our court of last resort in a recent case[15] as follows: "As we view it, the statute contemplates (1) the garnishee answering written interrogatories, (2) oral examination of the garnishee, supplementing the answers to the interrogatories, (3) traverse by plaintiff of the garnishee's answer, after the oral examination,[16] and (4), the determination of the issue joined by traverse."

(8) The majority opinion makes much of the fact that garnishee did not support his motion by affidavits. I suggest, however, that there is no statute or rule of court that requires such affidavits. Furthermore the trial court could have required, on plaintiff's application or on its own motion, that the garnishee submit evidence either in the form of affidavits or by submitting himself in open court for examination. Nor is it too late for us to remedy that situation even now, as I point out below.

### III. Our Alternative.

As above indicated, I feel that the judgment should be reversed on the merits. If that is not to be done I think the state of the record is such that we should at least do that which was done in Consolidated Radio Artists, Inc., v. Washington Section, etc., supra, so that we may be sure that the limit of our power has been exercised to prevent injustice. There, in a highly similar situation the U. S. Court of Appeals said: "We feel it our duty to remand the case to the trial court with instructions to reform its order so as to show whether the motion was heard entirely on affidavits and, if so, what affidavits were filed; and if it was heard partially on affidavits and partially on oral testimony or documents, how the latter were proved; and what facts were found by the court; with permission to the court, if in its opinion it will tend to clarify the facts and the right of the case, to grant a rehearing and permit the parties on such rehearing to introduce affidavits or oral testimony." [70 App.D.C. 262, 105 F.2d 788.]

These are my views of the considerations which must be weighed and the disposition which should be made in situations of this kind. If I am wrong, there is little hope for defendants or garnishees who are unwary enough to find themselves in default, and not adroit enough to conform to every technical rule thrown in their path.

---

[14] French v. Hay, 22 Wall. 238, 22 L. Ed. 854; Gray v. Lawlor, 151 Cal. 352, 90 P. 691, 12 Ann.Cas. 990; Lilly-Brackett Co. v. Sonnemann, 157 Cal. 192, 106 P. 715, 21 Ann.Cas. 1279.

[15] Young v. Nicholson, 70 App.D.C. 351, 107 F.2d 177, 179.

[16] Presumably plaintiff may skip the third step, foregoing the right of oral examination, and filing his traverse to the answer, at the risk of being subjected to an award of attorney's fee under Code (1940 Edition) § 16—329.